UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Ronald Levi,

      Plaintiff,

                                                                         08-3042

Brenda Wilts,
Keith Rose, and
Dave Biermann,

      Defendants.

### Order

      Plaintiff, who is being held at Rushville Treatment and Detention Center, alleges that his handcuffs were placed so tightly on his wrists during a six-hour transport in December 2007 from Cook County to Rushville that his wrists became swollen to twice their size. He alleges that he is diabetic, his pleas to loosen the cuffs were ignored, and that he has suffered permanent injury to his hand and wrist.

      Before the court is the defendants' motion for summary judgment, which is granted in part and denied in part for the reasons below. Plaintiff's motion to compel is also before the court, which is granted in part and denied in part.

### Standard

      Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

### Undisputed Facts

These facts are taken verbatim from the defendants' proposed undisputed facts, to the extent not sufficiently disputed by the plaintiff.

1. Levi is detained by the Department pursuant to the SVP Act.

2. Defendant Biermann was employed as a Security Therapy Aid-IV ("STA-IV") at the Rushville TDF for the times relevant to this action.

3. Defendant Rose was employed as a Security Therapy Aid-I ("STA-I") at the Rushville TDF for the times relevant to this action.

4. Defendant Wilts was employed as a Security Therapy Aid-II ("STA-II") at the Rushville TDF for the times relevant to this action.

5. On December 19, 2007, Levi was on a writ to the Circuit Court of Cook County. When the court appearance was over, Plaintiff avers that Defendant Rose purposely tightened Plaintiff's right hand cuff too tight. Plaintiff told Rose that the handcuffs were too tight, to which Rose replied, "They could be tighter." According to Plaintiff, he was then led outside where he complained to other DHS staff that his cuffs were too tight (Stanton and Hall), who referred Plaintiff to Defendant Wilts. Wilts then declared that the restraints were alright without checking them. (Plaintiff Aff.).

6. When Plaintiff arrived back at Rushville, he avers that his hand was "seriously swollen and [he] was in great pain." (Plaintiff Aff.). He estimates that his hand was swollen to twice its normal size. A Rushville sergeant opened the door and Plaintiff cried out, "Look at my hand!". According to Plaintiff, the sergeant "just looked" at Rose and Wilt and told Plaintiff he could go to the health care unit. Another officer--Stanton-- then removed the handcuffs and Plaintiff went to the health care unit. Plaintiff asserts that he now suffers arthritis and tendinitis as a result of the too-tight cuffs.[1]  Plaintiff filed a grievance but it was denied on the grounds that Plaintiff's claim of severe swelling was unsubstantiated by the medical records, and because Wilts had stated that he applied the cuffs per procedure, and Rose said that she had checked the cuffs and they were not too tight.

7. Levi was examined by Nurse Brown in the healthcare unit on December 19, 2007. Levi's wrists did not bleed as a result of the application of restraints, he asserts only because he was able to pull is sleeve between his skin and the handcuff. Nurse Brown noted redness and slight swelling of Levi's right wrist with good radial pulse and capillary refill of nailbeds, which indicated adequate circulation. Plaintiff asserts that the swelling was more than slight and he had circulation because by then the cuffs hand been taken off. Levi was provided with a bag for ice and was advised to apply the ice pack to his right wrist/hand every 15 minutes for the next 24 hours. Levi was advised to follow up with the healthcare unit if he experienced any further

---

[1] It appears Plaintiff is claiming that he suffers from arthritis and tendinitis, but it is not clear. (*See* d/e 29 p. 4 ("hand is now arthisitc and tendeous"[sic]).

problems.  Levi goes to healthcare twice a day for insulin for his diabetes and was told at those visits to keep applying ice.

8. Defendant Rose has no specific recollection of any incident alleged to have occurred on December 19, 2007.  Rose avers, however, that he would not have applied the black box to Levi in a manner that would have restricted circulation because he routinely makes sure that the restraints allow for sufficient movement by placing his index finger between the resident's wrist and the restraint.  Plaintiff disputes this, asserting if that were true, then Plaintiff would not have been injured.

9. Defendant Wilts avers that she checked the security devices for proper fit and security, and that she saw no evidence that the restraints were applied too tightly or that Plaintiff was in extreme discomfort, but Plaintiff disputes this.

10. Defendant Biermann was not present when the black box was applied to Levi, nor was Defendant Biermann present during Levi's transport back to the Rushville TDF on December 19, 2007.  Levi named Defendant Biermann as a defendant because he alleges that Defendant Biermann failed to investigate or discipline Defendants Rose and Wilts for injuries that Levi had already sustained and for which Levi had already received treatment.  Levi argues that a refusal to discipline is condoning the act.

11. Defendants assert that they have no knowledge of any past lawsuits filed by Levi, but Plaintiff disputes this, since he is suing Defendant Biermann's wife in a different lawsuit.

12. The large majority of residents at the Rushville TDF have repeatedly engaged in acts of sexual violence, some with adults.  Plaintiff does not dispute this, but he asserts that he has never committed such acts.

13. There is an established history of residents acting in threatening and assaultive ways toward the staff and other residents.  There have been numerous assaults on staff and between residents.  Plaintiff does not dispute this, but he asserts that he, "at the time of this action," had not engaged in any of this misconduct.

14. The black box is a restraining device that is applied over conventional handcuffs to limit a person's ability to move his hands and to prevent access to the handcuffs' key-holes. Plaintiff does not dispute that the black box is intended to ensure the safety of the security staff assigned to transport residents outside the secure perimeter of the Rushville TDF and to prevent escapes.

15. It is the responsibility of security staff who have been assigned to transport residents outside the secure perimeter of the Rushville TDF to apply the black box restraints to residents who: (I) have been admitted to the Rushville TDF within 120 days of the writ; (ii) have one or more major rule violations within the past year of the writ; or (iii) have been designated by the Security Director as having a security risk or concern that warrants the use of additional security measures.

16. Defendants did not create the policy that dictates when security staff are required to apply the black box.

17. Defendants Rose and Wilts were required to apply the black box to Levi on December 19, 2007, due to the major rule violation incurred by Levi on or about July 20, 2007.

**Analysis**

*I. Defendants' Motion for Summary Judgment (d/e 25)*

*A. Whether the manner in which Plaintiff's restraints were applied violated his constitutional rights requires the resolution of disputed issues of material fact. Summary judgment is therefore denied on this claim as to Defendants Rose and Wilts. Summary judgment is granted to Defendant Biermann because it is undisputed that he bears no personal responsibility.*

The Supreme Court in *Youngberg v. Romeo,* U.S. 307, 320 (1982) recognized that "there are occasions in which it is necessary for the State to restrain the movement of residents-for example, to protect them as well as others from violence." The Court analogized to liberty restrictions on pretrial detainees, which are constitutionally acceptable for "reasons reasonably related to legitimate government objectives and not tantamount to punishment." *Id.; Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003)(persons confined as sexually dangerous persons were like pretrial detainees and could be "subjected to conditions that advance goals . . . such as assuring the safety of others"). *Youngberg* held that decisions by "qualified professionals" on conditions of confinement were entitled to deference by the court, and that liability only attached if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." 457 U.S. at 322.

Here, the "professional decision" standard does not seem apt, because Plaintiff challenges the *way* that the restraints were applied, not the decision to apply them.[2] The standard for determining whether excessive force was used in applying the restraints falls under the due process clause of the Fourteenth Amendment. This standard is not wholly objective, but the Fourth Amendment's objective standard is generally the place to start and can serve to answer both the subjective and objective inquiry. *Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990)( "[m]ost of the time the propriety of using force on a person awaiting trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them."); *Wilson v. Williams,* 83 F.3d 870 (7th Cir.

---

[2]The court does not understand Plaintiff to be challenging the policy that residents with major rule infractions in the past year must wear black boxes when transported outside Rushville. In any event, he cannot pursue the claim in this case. He does not dispute that none of the defendants were responsible for devising that policy.

1996)(fourth amendment objective factors were relevant to determining intent to punish pretrial detainee; force must be "objectively unreasonable in light of the facts and circumstances of the time,"). The court must keep in mind, however, that "the due process clause does not proscribe negligence or even gross negligence, . . . .[so] "the search for 'punishment' cannot be wholly objective." *Id.* (internal citations and quoted cites omitted).

Defendants' version and Plaintiff's version differ significantly, and Plaintiff's version must be accepted on summary judgment. According to Plaintiff, he complained repeatedly that the cuffs were too tight and pleaded that the cuffs be loosened, but Rose and Wilts ignored him. Plaintiff says that his hand and wrist were swollen to twice their normal size by the time he arrived at Rushville six hours later, and Plaintiff has affidavits to corroborate his version. Under this version, a juror could find that Rose and Wilts used excessive force when Rose put the cuffs on too tight and later when Rose and Wilts failed to loosen the cuffs despite Plaintiff's pleas. Taking Plaintiff's version as true, Defendants would not be entitled to qualified immunity because a state actor would have known that such deliberate indifference violated a detainee's clearly established civil rights. *Saffell v. Crews*, 183 F.3d 655, 658 (7th Cir. 1999), *citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990); *Wilson v. Williams,* 83 F.3d 870 (7th Cir. 1996).

Summary judgment must be granted to Defendant Biermann, however. Biermann's failure to discipline Rose and Wilts does not amount to personal responsibility for their misdeeds. *See Burks v. Raemisch,* 555 F.3d 592, 593 (7th Cir. 2009)("The assumption underlying this choice of defendants-that anyone who knew or should have known of his eye condition, and everyone higher up the bureaucratic chain, must be liable-is a bad one. Section 1983 does not establish a system of vicarious responsibility."); *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007)("George's argument on the merits is that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself. That proposition would not help him if it were correct, for he has lost on all of his underlying constitutional theories. But it is not correct.").

*B. There is no evidence for a rational juror to find for Plaintiff on his retaliation claim. To the extent he is making a retaliation claim, summary judgment is granted to Defendants.*

Plaintiff seems to claim that the handcuffs were kept too tight in retaliation for Plaintiff's prior and pending lawsuits.

Acts which are constitutional can become unconstitutional if done in retaliation for the exercise of a constitutionally protected right. *See DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 1999)(citations omitted). "This is so even if the adverse action does not independently violate the Constitution." *Id.; Bridges v. Gilbert,* 557 F.3d 541, 552 (7th Cir. 2009).

"[T]he ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). It is not enough

5

for the plaintiff to show that retaliation was a motivating factor. The plaintiff must prove by a preponderance of the evidence that the exercise of his First Amendment rights was the "but-for" cause of the adverse actions. *Fairley v. Andrews*, 2009 WL 2525564 *7 (7th Cir. 2009)(remarking that 7th Circuit cases requiring retaliation as only motivating factor, rather than "but-for" cause, did not survive Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343 (2009)("*Gross* . . . holds that, unless a statute (such as the Civil Rights Act of 1991) provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law."); *see also Babcock*, 102 F.3d at 275 ("To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. . . .If the same action would have occurred regardless of the retaliatory motive, the claim fails.").

Plaintiff has no competent evidence that Ross and Wilts were motivated by retaliation for his prior or pending lawsuits. There is no evidence that they even knew about those lawsuits, much less that they were motivated by them. Accordingly, summary judgment will be granted to Defendants on this claim.

*C. There is no evidence of an equal protection claim. To the extent he makes an equal protection claim, summary judgment is granted to Defendants.*

Plaintiff seems to be asserting that the manner in which he was restrained violated his equal protection rights because he was treated differently than someone involuntarily committed as a patient in a mental health facility. If he is challenging Rushville's black box policy on equal protection grounds or otherwise, he cannot do so in this case because it is undisputed that Defendants had no role or authority in devising that policy. In any event, he has presented no evidence that he was treated differently than those similarly situated to him. Rushville does not violate its residents equal protection rights by having different rules than the rules of other mental facilities.

*D. Plaintiff does not appear to pursue a claim that Defendants were deliberately indifferent to his serious medical needs, nor does the record support that claim. Therefore the court does not address Defendants' arguments.*


II.     *Plaintiff's Motion to Compel (d/e 21)*

Plaintiff seeks the camera recording for the rear, back door of unit D-3 from 3-6 p.m. on December 19, 2007, and December 21, 2007. He asserts that the recording will prove that his hands were swollen to twice their size. Defendants respond that the recording is not in their possession or control and Plaintiff has not proven that it exists.

The recordings would be relevant to proving Plaintiff's claim, if the recordings exist. In absence of contrary evidence, defendants, as DHS employees, are deemed to have access to information about the existence of such recordings and the ability to ascertain who is the keeper of

6

such recordings and to produce those recordings if they do exist or name the DHS employee who is their keeper.. Accordingly, Plaintiff's motion to compel will be granted as to the recordings.

Plaintiff also seeks the names of the residents who were on the writ with him on December 19, 2007. Defendants object on the grounds that producing those names will violate the Illinois Mental Health and Developmental Disabilities Act. Witnesses to the incident, however, could provide relevant testimony. The court does not believe Defendants have adequately explained why these names cannot be produced (Plaintiff seems to have some of them already). Accordingly, Plaintiff's motion to compel will be granted as to this request.

Plaintiff also seeks the procedures for applying the black box, to show that Defendants did not follow those procedures. Defendants object for safety and security reasons, but they do not explain the basis for that conclusion. If revealing the procedures would compromise safety/security, Defendants should file the procedures under seal along with a motion for an *in camera* inspection.

The remainder of Plaintiff's requests to compel are denied. Federal Rule of Civil Procedure 26(b)(1) provides that the "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Relevant information need not be admissible at trial if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence. Plaintiff seeks all the past grievances against Defendants as well as their disciplinary records. Evidence of Defendants' misconduct against other residents involving different incidents would not be admissible to show that they mistreated Plaintiff. *See* Fed. R. Evid. 404(b)("Evidence of other . . . wrongs . . . is not admissible to prove the character of a person in order to show action in conformity therewith."). Defendants' treatment of different residents in different situations is not relevant to Defendants' treatment of Plaintiff on December 19, 2007. Further, there is no reasonably likelihood that culling through all prior grievances against Defendants will lead to any admissible evidence. Rushville security aides are sued frequently and often have grievances filed against them—that comes with the job. Requiring Defendants to locate all these grievances would place a heavy, undue burden on them (assuming the information is even retrievable), far outweighing any slight relevance they might have. Additionally, even if the plaintiff showed that Defendants' treatment of other residents might possibly have some marginal relevance, it would still not be admissible because any probative value it might have would be substantially outweighed by "the danger of . . . confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, . . . ." Fed. R. Evid. 403. Admission of other purported mistreatment of other residents would produce endless mini-trials within this trial. Accordingly, this request is denied.

Plaintiff's request for a doctor to examine him under Federal Rule of Civil Procedure 35 is denied. Rule 35 is not a procedure for parties to obtain expert testimony to support their case (nor is Fed. R. Evid. 706). Defendants do not seek to have Plaintiff produced for any examination under Rule 35. Further, there is no need for a court-appointed expert in this relatively simple case.

**IT IS THEREFORE ORDERED:**

1) Defendants' motion for summary judgment is granted in part and denied in part (d/e 25). The motion is denied as to Plaintiff's claim against Defendants Wilts and Rose that his hand restraints were applied and kept too tightly on December 19, 2007. The motion is granted as to all of Plaintiff's other claims, and as to Defendant Biermann.

2) The plaintiff's motion to compel is granted in part and denied in part (d/e 21). By September 30, 2009, Defendants are directed to produce to Plaintiff:

    a) The camera recordings for the back, rear door of unit D-3 on December 19, 2007 and December 21, 2007, from 3:00 p.m. to 6:00 p.m.. If those recordings do not exist, Defendants must set forth what efforts they made to locate them and their basis for that conclusion.

    b) The names of the residents on writ to Chicago with Plaintiff on December 19, 2007.

    c) The procedures for applying black box restraints to residents.

3) Other than the information directed to be produced in paragraph 2 above, the plaintiff's motion to compel is denied.

4) A final pretrial conference is scheduled for March 8, 2010 at 1:30 p.m. by video conference. The plaintiff shall appear by video conference. The defendants' attorney(s) shall appear in person before the court sitting in Urbana. The parties are further directed to submit the proposed final pretrial order by October 20, 2009. The defendants are reminded that they bear the responsibility for preparing the proposed final pretrial order pursuant to Local Rule 16.3-4(H). See Appendix 2 to Local Rules for a sample form. www.ilcd.uscourts.gov/local rules

5) The proposed final pretrial order must include the names of all witnesses to be called, including: the name, prison number, and place of incarceration for each inmate or pretrial detainee to be called as a witness; a listing of the non-party witnesses who will appear by video and the location from where those witnesses will appear; and, the names and addresses of any witnesses who are not incarcerated for whom trial subpoenas are sought. The plaintiff must provide the witness fee and mileage fee to any witness he seeks to subpoena and is responsible for timely requesting the subpoenas and serving them on the witnesses. Fed. R. Civ. P. 45;

6) A jury trial is scheduled for April 5, 2010 at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL. The plaintiff and the defendants shall appear in person before the court sitting in Urbana. Inmates of the Illinois Department of Corrections who are not parties to this case shall appear by video conference and IDOC employees who are not parties may appear by video conference. Other non-party witnesses may also appear by video conference in the court's discretion. The Clerk is directed to issue appropriate process for the personal appearance of the plaintiff at the trial and the video appearance of the video witnesses.

Enter this 4th day of September, 2009.

          **s\Harold A. Baker**
          _____
          HAROLD A. BAKER
          UNITED STATES DISTRICT JUDGE